TALIAFERRO, Judge.
Plaintiff sued to recover a balance due him on the price of construction of a plain stucco building, 18' x 27' at the corner of Texas and Jordan Streets in the City of Shreveport, Louisiana. Defendant owned the lot and another building thereon, which was at the time being used as a cafe. The contract for the construction of the new building, regrettably, was not reduced to writing. There were no written plans and specifications. This fact adds to the difficulty attending a solution of the factual issues that abound in the case.
When defendant first mentioned to plaintiff his desire for a small, plain building, the latter stated that he had recently constructed such a building on Line Avenue in the city, and suggested that defendant go with him to look at the same, thinking that from an inspection thereof defendant would be assisted in deciding what he wanted in the way of a building. This was done and immediately thereafter an agreement was reached by the parties. The Line Avenue building consisted simply of four walls, floor and roof. It was of stucco finish and was provided with one door, one window, one ceiling light and one gas outlet. It measúred 12' x 16'.
There is wide variance between.the parties as .concerns the terms of the contract, and the basis of pay for constructing the building. To begin with, defendant contends that it was originally agreed that it was to be 18' x 27', whereas plaintiff contends that the original understanding was that it should be 18' x 20', and that subsequently, at defendant’s request, its length was increased to 27'. It was agreed, however, that as to general outlines and character of material the building should be a duplicate of the one on Line Avenue.
The size of the. finished building has important bearing upon the merits of the controversy in view of the'sharp difference between the parties as concerns the basis of remuneration plaintiff was to receive for completing the structure. It is shown that in calculating th.e cost to construct a building, the amount of floor space is a, if not the, determining factor.
The Line Avenue building has 192 square feet of floor space. It cost approximately $4.68 per square foot. Plaintiff testified that he agreed to construct the building at a cost per square foot not in excess of' that of the Line Avenue building, and since defendant’s building has 486 square" feet of floor space, on this basis, it should have cost $2,289.00.
Defendant is positive that in addition to erecting the building and furnishing all material and labor necessary therefor, plaintiff agreed and obligated himself to do the following, viz:
1. Install four ceiling lights and four wall plugs;
2. Furnish and pay for the labor and material to complete the electrical system;
3. Provide, install and properly connect with water and sewerage lines, a sink;
4. Build some shelves,- a counter, and install some stools for use of patrons while eating;
5. Remove a small structure necessary to provide adequate ground space for th,e new building, and pour a, concrete floor therefor.
*166 He testified that all of this, plus the building proper, was to cost him only $2,-000.00.
It will be noted that all of the work and material embraced in the five numbered items is in excess of that put into the Line Avenue building, save one ceiling light and one gas outlet.
Plaintiff’s version of the terms of the contract is this:
He originally agreed to construct complete a building 18' x 20', provide all labor and material therefor, and install two ceiling lights and one base plug, on a cost plus 12% per cent basis. He says that he assured defendant that the final cost of the building would be around $2,000.00. He also testified that when laying off the ground for the foundation of the building, the defendant stated that he wanted the building to cover all of the lot except some nine feet, adjacent to his line, so as to leave space for vehicles to pass over, and that this is the reason the building’s length was extended seven feet.
It is not seriously questioned by defendant that in addition to completing the building satisfactorily, plaintiff provided the labor and furnished the material necessary to do that which was comprehended in the five items above described; and plaintiff testified that he did so by authority of defendant or his agent. But, defendant contends he did not authorize the extras and, therefore, he is not responsible for the cost of them.
Defendant admits that while the work was in progress he did authorize plaintiff to purchase and install an attic fan, and to build a barbecue pit in the building, the bricks for which he furnished. The fan cost $146.75 and the pit cost $383.39, making a total of $530.14. These amounts defendant paid on October 29, 1948, and do not have further importance in the case. He does not concede that he is liable for the cost of installing the attic fan.
Eliminating from the account the $530.-14, leaves it in this condition:
Cost of material and labor to complete the building according to plaintiff’s version of the original contract, as amended by increase in length of building, after eliminating charge error of $40.82. $1,847.99
12%% thereof. 231.00
Cost of material and labor to perform items 1 to 5. 971.79
12%% thereof. 121.47
12%% of the $530.14 payment.. 66.27
Total $3,238.52
Credits Nov. 12, 1947.. $2000.00
12%% of charge error of $40.82. 5.10 2,005.10
Balance Due $1,233.42
Plaintiff sued for $1,284.44. There was judgment in his favor for $1,238.51. This takes into account the error mentioned above, but does not give credit for the $5.10 to which referred. The trial judge gave lengthy written reasons to support his judgment. Defendant appealed.
It is not seriously contended by defendant that any part of the material charged to plaintiff and that furnished by him from his own warehouse did not find its way into the construction of the building. Nor is it contended that the charges for either the material or labor are, to any extent, excessive.
Plaintiff is a construction contractor of fifteen years experience. During the year preceding the trial of this case contracts executed by him involved around one-quarter of a million dollars. Evidently, he is competent in this field of activity. It would do violence to his reputation for ability and competency as a building contractor, to accredit him with having agreed to construct a building for $2,000.00, that, in fact, actually cost over $3,000. He could not long stay in business if his judgment was so fallible.
This building was primarily constructed to serve as a place in which to barbecue and retail over the counter meats of various kinds. Defendant’s kinsman, one Hornsby, had been selected to conduct the business as soon as the building was completed. He remained on the ground as defendant’s agent, while work was being done, and defendant admits that he had *167 full authority to represent and bind him in all matters concerning the construction of the building. Defendant seldom visited the scene of the work. Plaintiff was represented by his foreman, one Aldridge. Whatever extra work Hornsby desired done he went with it to Aldridge and he invariably did or had done all that Horns-by requested. Aldridge testified that either defendant or Hornsby authorized the extra work to be done.
Plaintiff testified, and we think truthfully, that at the beginning, defendant told him all he wanted was a plain building of four walls and a barbecue pit; that he would sell the barbecued products in the cafe adjoining. The sink was not considered until defendant was informed by someone that the Board of Health required it.
Evidently, while work on the building proper was in progress, deféndant and Hornsby changed their plans. They decided to conduct the retail of meats in the building and this required the construction of shelves, the counter and the installation of stools. It also required the use of an electric meat grinder and a walk-in ice box in which to keep fresh meats. The electrical wiring had been completed so as to serve the building as plaintiff says he originally agreed to construct. To operate the grinder and ice box, this wiring, in material respects, had to be changed. These facts are pointed to by appellee as corroborative of the contention that originally the meat grinder and ice box were not under consideration; and therefore, only light wiring was necessary.
The building was completed about September 15th, some sixty days after work began. Defendant paid the $2,000.00 some two months thereafter. The matter of the cost of the building was then discussed by him and plaintiff. Defendant thought some of the charges were excessive, and asked for itemized bills. These were given him soon thereafter, and repeated demand for payment made, but ignored. It is also pointed out that had the price been fixed at $2,000.00 defendant would not have been interested in itemized bills. He made no further payment until November 12, 1948, and this was done only after plaintiff’s attorney had made demand therefor. Anent this phase of the case, the lower Court said:
“and thereafter (after payment of $530.-14 on November 12, 1948) was the first plaintiff heard about the contention that the $2,000.00 was to cover the contract price. Hence, we do not think that defendant’s action is in line with that of a person who, in his own mind, had made a flat contract of $2,000.00, and when the work had been completed would have gone down and paid the $2,000.00 and said ‘here’s your money’; he would not have asked for itemized bills, etc.”
******
“We think defendant has received from plaintiff a building which cost the amount stated by plaintiff and that he should pay for it, believing that plaintiff has made out his case; and that defendant did not satisfactorily prove his defense.”
We agree with the Court’s resolution of the factual issues in the case, and, for the reasons assigned, the judgment appealed from is reduced to One Thousand Two Hundred Thirty-Three and 42/100 ($1,-233.42) Dollars; and as thus amended, it is affirmed with costs.